HALL, Judge.
A. M. & J. Solari, Ltd., a Louisiana Corporation, filed this suit on February 8, 1960 against Richard C. Fitzgerald seeking to recover the sum of $9,750.00 allegedly withdrawn by him from the funds of the corporation unlawfully and without authority while he was then acting as an officer of the corporation.
Fitzgerald filed answer in which he admitted receiving weekly payments from the corporation during the period from October 1957 to September 1958 which aggregated the sum claimed, but alleged that the payments were lawfully made to him as consultant fees and that the payments were approved by the president of the corporation and were well known to, acknowledged by, and acquiesced in, by the individual members of. the Board of Directors who made no obj ection or opposition thereto during said period. He further alleged that although future payment of these fees were suspended by resolution of the Board of Directors in the latter part of September 1958, he nevertheless continued, with the knowledge and acquiescence of the Board, to render services as a consultant from that time until December 31, 1958. He averred that these services were worth $3,500.00 and reconvened for that amount.
On July 10, 1961 Omar H. Cheer Jr., was substituted as party plaintiff in the place of A. M. & J. Solari, Ltd., having acquired the cause of action by assignment from the corporation on May 15, 1961.
The case was heard on the merits in April 1962, and on May 4, 1962, the District Judge rendered judgment in favor of “the plaintiff, A. M. & J. Solari Ltd.” on both the main and the reconventional demand. On May 7, 1962 the Judge having noted that the corporation’s claim had been assigned to Omar H. Cheer, Jr., reopened the case ex proprio motu for the restricted purpose of giving the defendant an opportunity to avail himself of the right provided by Civil Code Article 2652 (LSA- *898 C.C. Art. 2652) when there has1 been a sale of litigious rights. After hearing testimony relative to the amount paid by Cheer, Jr., for the assignment the District Judge rendered judgment as prayed in favor of the substituted plaintiff, Omar H. Cheer, Jr., on the main demand, and dismissed defendant’s reconventional demand. Defendant appealed.
The record reveals that A- M. & J. Solari, Ltd., has operated a departmentalized grocery store at the corner of Royal and Iber-ville Streets in the city of New Orleans for many years. Immediately prior to the events pertinent hereto its stock was owned in its entirety by Omar H. Cheer, Sr., and his son, Omar H. Cheer, Jr., the father .owning all of 'the preferred stock amounting to 756 shares and the son owning all of the common stock amounting to 759 shares. Each share of preferred and each share of common stock was entitled to one vote in the corporate affairs. In September 1957 Omar H. Cheer, Jr., sold all of the common stock to a group referred to as the “Fitzgerald Group”. Omar H. Cheer, Sr., continued to own and hold the preferred stock.
On September 3, 1957, immediately after its purchase of the common stock, the Fitzgerald Group, having the voting control of the corporation, • elected a new Board of Directors which in turn elected a new set of officers.. The new Board cpnsisted of nine directors, .six of whom -were from the Fitzgerald Group and the other three being representatives of the Cheer interests. Among those elected as directors from the Fitzgerald Group were the defendant Richard C. Fitzgerald, Francis X. Orofino and Clarence H. Wagner. Fitzgerald became vice-president .and treasurer, Orofino was ■elected vice-president and .-Wagner was elected president. . . •
Shortly after their election as officers and directors Fitzgerald,-.Orofino. and Wagner met. at.-a. restaurant for-.-.lunch and agreed. among themselves-th-^t the three .of them would render.-.services tp-tlm.ijorpopq,tion as “consultants” and would each draw $125.00 per week from the corporate treasury as “consultant’s fees”.
Fitzgerald drew $250.00 as fees on October 16, 1957, covering a two weeks period, and thereafter drew $125.00 each week until May 11, 1958 on which date he started drawing $250.00 per week. He drew fees at the latter rate until September 25, 1958 at which time the Board of Directors stopped further payment of such fees. The total fees paid Fitzgerald amounted to $9,-750.00 the recovery of which amount is sought by the corporation and its assignee in this litigation.
Plaintiff contends that the payment of these fees was illegal in that it was never authorized by the Board of Directors and violates the following provision of the corporate charter:
“The 'president of the corporation shall fix and determine the salaries of all of the employees and clerks of- the corporation, and shall have the power to employ and discharge such clerks and employees, and define their duties; all however subject to the approval and' ratification of the Board of Directors of the corporation.” (Emphasis supplied.)
. Defendant makes no contention that his employment was ever expressly ratified by ..the Board. He contends that he was employed by the president, rendered full service to the corporation, and that his withdrawals were approved by the president, and were known to, and acquiesced in by the individual members of the Board of Directors and that this constituted an implied or tacit ratification by the Board.
Fitzgerald testified that at the. time, he was hired as a consultant by Wagner he knew nothing of the retail grocery business. However,- he. considered himself ■ an- expert in real estate, investments and since the .major asset of the corporation was the ground and--.building which housed, the-business he “and Wagner felt that he might be able; to devise a more economical ps.e fpr .tfie prop *899 erty. He felt that in order to accomplish this purpose it was necessary for him to familiarize himself with the operation of each department. He testified that he devoted his entire time delving into the operation and economics of the business until as time went on he became an expert in the retail grocery field and became valuable to the corporation as a consultant in that field.
Plaintiff does not deny that' Fitzgerald spent all or most of his time at the grocery store, but plaintiff emphatically denies that the members of the Board knew that he had been hired by the president or that he was drawing a salary or fees from the corporate treasury until sometime in the latter part of May or early June of 1958 at which time protests were made which resulted in the Board of Directors stopping the payments at the first Board meeting held thereafter.
The main issue in the case is whether or not the directors knew of the defendant’s employment and withdrawals and if so whether they impliedly -ratified the arrangement by failure promptly to protest.
During the period covered by the withdrawals the Board of Directors was composed of the following named members from the Fitzgerald Group viz.: Messrs. Fitzgerald, Wagner, Orofino, Moss, Fawcett and Little; and the following named members of the Cheer group viz.: Messrs. Cheer, Sr., Cheer, Jr., and Elsasser.
In an effort to show that the individual members of the Board were well acquainted with Fitzgerald’s withdrawals and acquiesced therein, defendant adduced the testimony of four members of the Board viz.: Fitzgerald, Wagner, and Moss from the Fitzgerald 'Group and Elsasser from the Cheer group.
■ Fitzgerald and Wagner of course knew of the withdrawals, since both received consultant’s fees. Neither however testified that any other director had such knowledge. Wagner “assumed” they all knew about Fitzgerald’s’ withdrawals but had never heard it discussed among the directors!
. Moss testified that he himself knew of the withdrawals within two weeks after they started, having been told by Wagner and Orofino. He never discussed it with any of the other directors, but “assumed” it was common knowledge.- -
Elsasser testified that he had knowledge that a consultant fee was being paid Fitzgerald but had difficulty in fixing the date such knowledge came to him. The best he could pinpoint the. date was midway between September of 1957 and September of 1958, but stated that it could have been only four months before September of 1958.
Defendant did not take the testimony of Orofino, Fawcett or Little, the ■ remaining members of the Fitzgerald Group of directors. He however adduced the testimony of Mrs. Ruth W. Reed, apparently on the ground that she-was one of the directors. She stated that she knew of the withdrawals but did not know when she learned it. The record shows that Mrs. Reed did not become a member of the Board until November of 1958, some two months after the Board had stopped the payments and her testimony is of no value.
Cheer, Jr., testified that his father, who owned all of the preferred stock, was apprehensive about his investment after control passed to the Fitzgerald Group. He further testified that in an effort to allay this apprehension Fitzgerald, at the September 1957 Board meeting stated to him and to Herbert S. Weil, an attorney who attended this and other meetings as Cheer, Sr.’s proxy, that no salaries would be paid .to his group. Weil’s testimony confirms this statement. It is also consonant with the testimony of Mr. Frantz, then secretary of the company, who stated that on or about October 10, 1957 Fitzgerald promised Cheer, Sr., in his presence that no salaries would .be.paid to the Fitzgerald -Group. .
Cheer, Jr., further -testified that he did not know that Fitzgerald, Wagner and Oro- *900 fino were drawing “consultant’s fees” until June of 1958, when Orofino, who had fallen out with the Fitzgerald Group and had been discharged, informed him that the three had each been drawing $125.00 per week. (The record reveals that Fitzgerald doubled his withdrawals after Orofino was discharged.) Cheer, Jr., immediately passed this information to his father’s attorney, Weil, and they both thereafter made every effort to secure a Board meeting. He talked to Wagner personally and was informed by Wagner that he Wagner, had stopped his own withdrawals in May on the advice of the corporation’s attorney. In spite of his and Weil’s efforts no meeting of the Board was called until September 25, 1958. At this meeting, which was attended by Fitzgerald, the Board adopted a resolution (without a dissenting vote) stopping Fitzgerald’s withdrawals, and instructed the corporation’s attorney to look into the law to see if the corporation could recover the money drawn by Fitzgerald, Wagner and Orofino.
Weil confirmed Cheer, Jr.’s testimony about the efforts made to secure a Board meeting and the happenings ,at the September 25, 1958 meeting. Their testimony as to what transpired at the meeting was also confirmed by Mr. Wood Brown who attended the meeting as an observer for the Cheer interests.
As a matter of fact the passage of the resolution stopping the withdrawals is not denied by the defendant. (There are no written minutes of this meeting, and furthermore it is admitted by both plaintiff and defendant that the minutes of all Board meetings were woefully kept, if kept at all, and that such minutes as exist are not at all accurate, containing many omissions and some mistakes.)
The record reveals that the books of the corporation were likewise in bad shape, and that no financial statement revealing the payment of consultant’s fees was ever presented to the Board or came to its attention.
The testimony of defendant’s witnesses in our opinion falls short of proving that all, or even a majority of the nine directors, had knowledge of the withdrawals prior to June 1958. Of course, Fitzgerald, Wagner and Orofino knew because they were parties thereto. Besides these three the only other director proved to have had knowledge of the withdrawals was Moss. Elsasser did not get his information until1 about the time the situation was revealed to Cheer, Jr.
The defendant points to the fact that everyone knew that Fitzgerald was devoting all or the greatest part of his time to the store. He set up a desk in the store next to the desk of Cheer, Sr., and defendant argues that Cheer, Sr., must have known that Fitzgerald was getting paid since according to Fitzgerald’s testimony the two were very friendly. And if Cheer, Sr., knew, the defendant argues, he must certainly have informed his son.
Defendant further contends that Cheer, Jr., must have known of the withdrawals almost from their inception because he and Orofino were friends and met for breakfast regularly at the store.
However Cheer, Jr., emphatically denies that he had any knowledge of the withdrawals until June 1958. Orofino was not called as a witness by the defendant and Cheer, Sr., died before the trial.
Defendant lays great stress on the fact that the Fitzgerald Group was in control and could have ratified the withdrawals at any time.
It is significant however that although the Fitzgerald Group had voting control of the Board from September 1957 until June of 1959 no attempt was ever made to ratify the withdrawals. On the contrary, when the Cheer group protested, the Board, instead of ratifying the withdrawals, unanimously passed a resolution to stop them.
This lends credence to plaintiff’s testimony that the Fitzgerald Group had agreed not to vote themselves any salaries and *901 also tends to confirm Weil’s testimony tliat the members of the Board were well aware at all times that had they attempted to vote themselves salaries he, representing Cheer, Sr.’s 49 plus percent ownership of the corporation, would immediately have brought proceedings to liquidate the corporation, which was in bad financial circumstances.
It would serve no good purpose to review the testimony any further. We are convinced from a painstaking consideration, of the record that defendant has failed to, prove any ratification by the directors of Fitzgerald’s employment or his withdrawals. The fact that he spent most of his time at the store can be explained by the fact that he had a personal investment to protect. It is doubtful if his services were worth anything to the corporation. He lacked experience in the retail grocery business and moreover the corporation had employed a grocery man, Mr. Fawcett, at $12,000.00 per annum to operate the store as its general manager.
We are likewise of the opinion that the District Court was correct in denying defendant’s reconventional demand.
Cheer, Jr.’s sale of the common stock to the Fitzgerald Group was made partly on credit' th.e'stock being pledged to secure the credit portion -of the purchase price. In June of 1959 Cheer, Jr., foreclosed the pledge and reacquired the stock. Thereafter this suit was filed by authority of a resolution of a newly elected Board of Directors. In the spring of 1961 Cheer, Jr., sold all of the common stock to another group of investors, and as a part of the transaction the cause of action in this suit was assigned to him by the corporation.
As previously noted the District Judge reopened the case ex proprio motu for the purpose of permitting defendant to take advantage of the provisions of LSA-C.C. Art. 2652 which reads as follows:
“He against whom a litigious right' . has been transferred, may get himself released by paying to the transferee the real price of the transfer, together with the interest from its date.”
Plaintiff objected to the re-opening of the case on the ground that it was too late for the defendant to avail himself of the provisions of this article, citing Clement v. Sneed Brothers, et al., 238 La. 614, 116 So.2d 269. The District Judge .referred the objection to the merits and proceeded to hear testimony relative to the price Cheer Jr. had paid for the assignment.
The defendant,. contending that Cheer, Jr., had paid nothing for the claim tendered plaintiff $1.00 for a release from the suit. The District Judge found however that plaintiff had paid the full face value of the claim against defendant .by taking a deduction of $9,750.00 from the initially agreed sales price of his stock and held that defendant would have to tender the full face value in order to be released, Although we find no manifest error in the trial court’s findings of fact, we are of the opinion that at the time the case was reopened it was then too late for defendant to avail himself of the provisions of the Article 2652. He had had knowledge of the assignment of the claim to Cheer, Jr., for at least eleven months before the case went to trial and had thereafter tried the case to conclusion without ever seeking to avail himself of its provisions.
 In Clement v. Sneed Brothers, supra the Supreme Court held that a party seeking to redeem a litigious' right must be prompt in making known his intention, and if after learning of the transfer he continues to contest the suit and protract the litigation he will not be permitted to redeem because by doing so he defeats one of the objects of the Article 2652 which is the prevention of unnecessary litigation.
For the foregoing reasons the judgment appealed from; is'affirmed.
Affirmed.