380 So.2d 155 (1979)
Leonard CHARRIER
v.
Louise Lessley BELL et al.
No. 12949.
Court of Appeal of Louisiana, First Circuit.
December 27, 1979.
J. Arthur Smith, III, Carlos E. Lazarus, Baton Rouge, counsel for plaintiff and appellee.
Fred G. Benton, Jr., Baton Rouge, counsel for defendants and appellant.
Before ELLIS, CHIASSON and PONDER, JJ.
PONDER, Judge.
The State of Louisiana appealed from the trial court's holding that plaintiff was entitled to release himself against a litigious right purchased by the state.
The issues are:
1. The necessity of prompt demand to be released, and
2. The meaning of the term real price of La.C.C. Art. 2652.
We reverse and remand.
Plaintiff found a Tunica Indian burial place and took a large quantity of artifacts from the graves. He later filed a suit against the owners of the land to determine his rights to the artifacts. The state intervened asserting a right to the artifacts on a number of grounds. However, it negotiated a purchase of the land and the "right, title and interest" of the owners of the land to the artifacts. The settlement had been executed by all parties by June 27, 1978; a conference of the court and the litigants, to which plaintiff's counsel was invited, was held.
The act of sale was executed on August 20, 1978. On September 7, a judgment homologating the settlement was signed; a copy was served on the plaintiff. On September 21, 1978, plaintiff offered to settle with the state for $25,000.00 plus costs and expenses. He referred to his awareness of his right to redemption of a purchased litigious right. The case was partially tried on the merits for a full day on September 25. On October 6, the deposition of Alan Toth was taken. On December 11, the depositions *156 of Drs. Steven Williams and Jeffrey P. Brian were taken in Massachusetts. On December 18, finally, the motion for litigious redemption was filed and ordered to be heard on January 8, 1979, the date set for continuation of the trial on the merits. The court ruled that the right purchased by the state was a litigious one and that plaintiff could get himself released by paying $25,000.00 plus interest into court after the state refused to accept the offer.
In the early case of Leftwich v. Brown, 4 La.Ann. 104 (1849), the court said:
"But if, as the defendant has done in this case, he continues to contest the suit, raises difficulties as to the right of the plaintiff to recover his debt and protracts the litigation, he evidently defeats the very object of the law, and cannot avail himself of the provision which the law has established in his favor for the purpose of terminating litigation. To permit him to do it, would be to defeat the very object of the law."
That is still the law of Louisiana. See Smith v. Cook, 189 La. 632, 180 So. 469 (1937); Crain v. Waldron, 210 La. 561, 27 So.2d 333 (1946); Clement v. Sneed Brothers, 238 La. 614, 116 So.2d 269 (1959); A. M. & J. Solari, Ltd. v. Fitzgerald, 150 So.2d 896 (4th Cir. 1963), writ ref. 244 La. 622, 153 So.2d 414 (1963).
We hold that the filing of a motion in December after being informed of the negotiation and pending sale in June and after further preparation and discovery work have been effected was not timely.
Moreover, another reason for our decision is the failure to pay the real price of the transfer required by C.C. Art. 2652.[1]
The State of Louisiana paid the landowners a total of $175,000.00 for the land and the artifacts. By ascribing $1,000.00 per acre to about 150 acres and depending on the wording of the act of sale and the homologation thereof, the lower court held that the state had paid a total of $25,000.00 for the artifacts. It was also unquestioned and the court held that the state had given a broad warranty to the landowners. The court allowed the plaintiff to give to the state a warranty to hold the state free from liability on its warranty to the landowner.
We believe the trial court erred. There evidently was no effort to get the landowners to accept the plaintiff's warranty in lieu of that given by the state and certainly the court could not decree that result against the landowners' desires.
We believe, and hold, that the warranty given by the state was an integral part of the "real price" paid by the state and that the warranty by the plaintiff is not the equivalent of the warranty given by the state.
Plaintiff contends, and the lower court held, that he should not be prevented from getting himself released because of the different economic powers between him and the state. This argument is beside the point. The real price could be so high financially that the plaintiff could not pay it. Would he argue that he should be allowed to substitute his efforts for those of an artist who agreed to paint a portrait as payment for a litigious right?
Plaintiff does not have an absolute right to get himself released without paying to the transferee the "real price of the transfer", whatever that price may be. The fact that Art. 2652 speaks of interest on the real price leads to the conclusion that it was intended to include only those transfers that were made in return for the payment of a certain amount in money.
For these reasons the judgment of the lower court is reversed at appellee's costs and the case is remanded for further proceedings not inconsistent with this decision.
REVERSED AND REMANDED.
NOTES
[1] C.C. Art. 2652:

"He against whom a litigious right has been transferred, may get himself released by paying to the transferee the real price of the transfer, together with the interest from its date."