598 So.2d 1160 (1992)
MARTIN ENERGY COMPANY and Ken G. Martin
v.
Melville F. BOURNE, Jr.[1]
No. 91 CA 0313.
Court of Appeal of Louisiana, First Circuit.
April 10, 1992.
E.B. Dittmer, II, Bogalusa, and Douglas C. Ellis, Covington, for plaintiffs-appellant.
Peter Carmichael, Baton Rouge, for defendant-appellee (Borne).
*1161 Michael J. Paduda, Bogalusa, for defendant (USF & G).
Before WATKINS, CARTER and FOIL, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment granting defendant litigious redemption.

BACKGROUND
In 1986, Martin Energy Company (MEC) owned the property and improvements at 134 East Ruelle Drive, Beau Chene Subdivision, Mandeville, Louisiana. Ken G. Martin, MEC's general manager, occupied the home at 134 East Ruelle Drive. At the same time, Melville F. Borne, Jr. owned the home at 136 East Ruelle Drive.
On June 10, 1986, petitioners, MEC and Martin, filed a suit for damages against defendant, Borne, alleging that Borne violated certain provisions of the Beau Chene Homeowners Association's servitude, privilege, and/or building restrictions. Additionally, petitioners alleged that Borne conducted other activities upon his property causing property damage to the MEC property and personal injuries to Martin.
Subsequently, Borne filed a reconventional demand for damages against Martin. These damages allegedly resulted from a series of acts of malicious prosecution, abuse of right, false imprisonment, false accusation, and defamation, causing substantial injury to Borne, his reputation, and his standing in the community.
Thereafter, MEC, Martin, and/or various companies, owned by Martin and of which Martin served as president, entered into several transactions involving the property at 134 Ruelle Drive. On July 24, 1989, by act of cash sale, MEC sold to Hojew, Inc. (Hojew) the East Ruelle Drive property for the following consideration:
TEN DOLLARS ($10.00) and other valuable services, in part payment and deduction whereof the purchaser(s) has (have) well and truly paid unto the vendor(s) the sum of TEN DOLLARS ($10.00) and other valuable services, receipt of which is hereby acknowledged and complete acquittance and discharge granted therefor. And for the balance of said purchase price the purchaser(s) does (do) hereby assume, jointly and solidarily with the vendor(s) herein, the following obligations, including the payment of
1. Mortgage note originally drawn April 1, 1985 in the principal sum of Three Hundred Ten Thousand and NO/100 ($310,000.00) Dollars, on which there was an unpaid principal balance as of October 1, 1988 of $251,307.00, plus unpaid interest from that date forward, made and subscribed by Martin Energy Company payable on demand to the order of Bearer, bearing interest at the rate of thirty (30) percent per annum from date until paid, paraphed for identification with an act of mortgage passed before Martha L. Jumonville, Notary Public, on April 1, 1985, recorded in MOB 1055, Folio 848, and Instrument No. 576766.
2. Mortgage Note originally drawn on June 16, 1989 in the principal sum of One Hundred Fifty Thousand and NO/100 ($150,000.00) Dollars, made and subscribed by Martin Energy Company, payable to the order of Bearer, bearing interest at the rate of eight (8) percent per annum, payable on or before five years from said date, all according to its tenor, paraphed for identification with an act of mortgage passed before Martha L. Jumonville, Notary Public, on June 16, 1989, recorded in MOB 1335, Folio 882 and Instrument No. 725601.
3. Assignment of Accounts Receivable made June 26, 1989 in the principal sum of One Million ($1,000,000.00) Dollars, made and subscribed by Martin Energy Company to Martin Resources, Inc. arising from any proceeds now or hereafter received or recovered from or out of the lawsuit between Martin Energy et al [sic] and Melville F. Borne currently pending in the 22nd Judicial District Court, Parish of St. Tammany, State of Louisiana. *1162 By act of cash sale, dated August 15, 1989, Hojew transferred the East Ruelle property to EJT, Inc. (EJT) for the identical consideration recited above. Thereafter, on November 3, 1989, EJT transferred the East Ruelle property to Martin Riverside Gas Company (Martin Gas). The Act of Cash Sale between EJT and Martin Gas recited the identical consideration as the two previous transactions.
On November 28, 1989, Martin Gas filed a motion to be substituted, in place of MEC, as one of the petitioners in the suit filed against Borne. Thereafter, on August 20, 1990, Borne filed a peremptory exception pleading the objection of litigious redemption. Contemporaneously with the filing of the exception, Borne deposited into the registry of the court the sum of $10.00, together with $0.92, which represented the legal interest on such amount at an annual rate of 11.5% from the date of the alleged transfer of the litigious rights on November 3, 1989, through the date of the filing of the exception. After a hearing, the trial judge determined that the real price for the transfer of the litigious rights was $10.00 plus interest. Accordingly, the trial judge maintained Borne's exception and allowed Borne to redeem the litigious right against him.
From this adverse judgment, Martin Gas appealed, assigning the following errors:
1. The trial court erred in granting litigious redemption against Martin Riverside Gas Company, which did not own these rights in any case.
2. The trial court erred in determining that the real price for the transfer of the litigious rights was $10.00.
3. Alternatively, if the only price paid for the transfer was $10.00, then the transfer was a disguised donation and the Court erred in ordering redemption of the litigious rights.
4. The Court erred in determining that the claim for redemption of the litigious rights was asserted timely.

REQUISITES OF A LITIGIOUS RIGHTS CLAIM
LSA-C.C. art. 2653 makes it clear that, for the purposes of litigious redemption, there must exist a suit and contestation on the same. In Hawthorne v. Humble Oil & Refining Company, 210 So.2d 110, 112 (La.App. 1st Cir.), writ denied, 252 La. 832, 214 So.2d 160 (1968), the court noted that "a right transferred after suit is instituted and an answer filed thereto, and before the judgment therein is final, is a litigious right, since there is a suit and contestation thereon."
In the instant case, MEC and Martin filed the instant suit for damages against Borne on June 10, 1986. Borne answered petitioners' suit and filed a reconventional demand against Martin. Thereafter, on July 24, 1989, the rights to this pending litigation were transferred by MEC. Subsequently, the property was transferred twice more. Prior to the rendition of judgment, an exception pleading the objection of litigious redemption was filed by Borne. Thus, it is clear that the requirements set forth in LSA-C.C. art. 2653 have been met. See Calderera v. O'Carroll, 551 So.2d 824, 826-27 (La.App. 3rd Cir.1989), writ denied, 556 So.2d 60 (La.1990).
REDEMPTION OF LITIGIOUS RIGHTS
LSA-C.C. art. 2652 provides as follows:
He against whom a litigious right has been transferred, may get himself released by paying to the transferee the real price of the transfer, together with the interest from its date.
As a general rule, transfer of a litigious right subject to the provisions of LSA-C.C. art. 2652 must be made in consideration of a price. It follows, therefore, that only sales and onerous transfers in which a price can be determined are contemplated by the codal provisions governing litigious redemption.[2] However, a plaintiff does not have an absolute right to be released. To *1163 be released, the plaintiff must pay to the transferee the "real price of the transfer," whatever that price may be. Charrier v. Bell, 380 So.2d 155, 156 (La.App. 1st Cir. 1979), writ denied, 382 So.2d 165 (La.1980). In Charrier, the court noted that LSA-C.C. art. 2652 speaks of interest on the real price, which leads to the conclusion that redemption should only apply to transfers made in return for the payment of a certain or determinable amount of money.
Moreover, the law does not require that the "real price" paid for the litigious right be equal to the value of the right transferred. In Calderera v. O'Carroll, 551 So.2d at 825-26, the plaintiffs obtained a money judgment against the defendant, O'Carroll. When the judgment creditors attempted to seize his automobile in satisfaction of their judgment, O'Carroll filed suit for wrongful seizure. During the pendency of the proceedings, O'Carroll filed a voluntary bankruptcy petition. The district court rendered, but did not sign, a judgment in favor of O'Carroll on the wrongful seizure claim. Thereafter, the Bankruptcy Trustee sold to O'Carroll the rights to the litigation over the wrongful seizure for $250.00 and 10% of the monies recovered in the litigation. The court then permitted the judgment creditors to release themselves from the litigious right by paying to O'Carroll the "real price of the transfer," which the court determined was $250.00. The appellate court, in affirming the trial court judgment, quoted from the district court's reasons as follows:
"If his assignee [O'Carroll] made a recovery, he [Trustee] was to receive 10% of the recovery. If O'Carroll made no recovery, whatever the reason, the Trustee would receive nothing more than the $250.00." "The codal article [La.C.C. art. 2652] does not speak in terms of what the seller of a litigious right has expectations of receiving. It only speaks of reimbursement to the purchaser of the price."
Calderera v. O'Carroll, 551 So.2d at 827.
Additionally, a partial transfer of a litigious right may take place when a sole owner of the right transfers a portion thereof or when one of several co-owners transfers his entire partial interest in the thing in litigation. See Comment, The Transfer of Litigious Rights in Louisiana Civil Law, (pt. 2), 1 La.L.Rev. 818, 822 (1939). In such cases, the exercise of rights under LSA-C.C. art. 2652 will not operate to end the litigation. Moreover, if a litigious right is transferred with a non-litigious right in a lump sum transaction, an apportionment of the price must be made in order to determine the amount of reimbursement due the transferee.
Although there is no time period set out in the codal provisions governing litigious redemption, a debtor should promptly exercise the redemption. As pointed out in Comment, The Transfer of Litigious Rights in Louisiana Civil Law, (pt. 2), 1 La.Law Rev. 818, 827 (1939), a person entitled to invoke litigious redemption "may not fight the case on its merits until it is apparent that the case is lost and, at the last moment, exercise redemption."

STANDARD OF REVIEW
In Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989), the Louisiana Supreme Court clearly and unequivocally set forth the standard of review of factual findings as follows:
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.... Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in *1164 demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. (citations and footnote omitted.)

ANALYSIS
Applying the legal principles governing litigious redemption to the facts of the instant case, we must determine whether the trial court was manifestly erroneous or clearly wrong in granting Borne litigious redemption for the sum of $10.00.
At the hearing on the exception, the testimony of Ken Martin, who testified as general manager of MEC and as president of each of the other three Martin corporations, formed a majority of the evidence. Martin testified that the document, which was introduced into evidence as Borne 1, represented the transfer of the lot and improvements from MEC to Hojew. Martin also testified that the litigious rights of MEC were also specifically transferred in that document. However, Martin explained that, in item three of the recited consideration, he intended to transfer the litigious rights from MEC directly to Martin Resources, which was not a party to any of the agreements. Martin testified that in the transfer from Hojew to EJT, the documentation for which was introduced into evidence as Borne 2, the property obtained in Borne 1 was transferred to EJT by Hojew for the same consideration and under the same terms and conditions as recited in the Borne 1 transfer. With regard to Borne 3, the transfer from EJT to Martin Gas, Martin testified that EJT transferred everything it obtained in Borne 2 to Martin Gas.
The consideration in each of these transactions was $10.00 cash, the other three items listed in the cash sales, and "other valuable services." The letter, according to Martin, was the mere idea of keeping the transferred property in the family, which had no monetary value. With regard to item one in the cash sale, the principal balance due on the mortgage note, dated April 1, 1985, was $251,307.00 as of October, 1988. Martin testified that the balance on this note was the same in all three transactions because MEC stopped paying the notes in October or November of 1988 and that none of the other Martin corporations ever made any payments on the note. The mortgage note in the principal sum of $310,000.00 was introduced into evidence as Borne 5. Martin testified that this mortgage was later cross-collateralized with two other debts to the same creditor prior to the transfers among the various Martin corporations.[3] According to Martin, the difference between the total indebtedness (the original mortgage and the subsequent cross-collateralized amounts) of $418,000.00 and the $325,000.00 appraised value of the *1165 property[4] represents the amount for which the litigious right was transferred, namely $90,000.00. However, Martin acknowledged that nothing in the documents reflects this $90,000.00 consideration. Moreover, Martin testified that none of the corporations signed any documents assuming the indebtedness set forth in the allegedly cross-collateralized loans. Martin also acknowledged that none of the corporations, other than MEC, had any economic power to service the indebtedness. The corporations that acquired the property in Borne 1, 2, and 3 did not have any cash flow or conduct any business at the time of the transfer or since any of the transfers.
Martin also testified that those documents represent his intent to transfer the litigious rights to Martin Resources.[5] Martin testified that he intended to transfer the litigious right, but not for $10.00. Martin testified that he meant for the rights to be transferred for $90,000.00. Martin testified that Martin Resources had not paid anything for the right, but that he anticipated receiving about $90,000.00 from the suit against Borne.
In his oral reasons for judgment, the trial judge noted that there was no dispute as to the sale of the litigious right against Borne. A series of transfers was made among Martin's various corporations, and the consideration for each of these transactions was identical: (1) ten dollars and other valuable services performed by the purchaser; (2) assumption of the mortgage indebtedness relating to the property, which had a balance of $251,307.00; (3) assumption of a mortgage indebtedness in the sum of $150,000.00, which indebtedness had never been funded and upon which nothing was owed; and (4) obligation for the purchaser to pay to Martin Resources the proceeds recovered from the instant suit up to $1,000,000.00. The trial judge determined that Martin Gas was unable to show that it performed any "valuable services" as consideration for the sale. The trial judge determined that the hand notes allegedly cross-collateralized were not executed in connection with either of the two loans referred to in the acts of cash sale, had not been reduced to writing, and were not referenced to the mortgage note in question. Moreover, the trial judge determined that the value of the East Ruelle property at the time of the transfers was $325,000.00. The trial judge concluded that the evidence established that the real price paid for the transfer of the litigious rights was $10.00. Accordingly, the trial judge determined that Borne could redeem the litigious rights sold for the real price paid for them by Martin Gas, namely $10.00, plus interest.
After carefully reviewing the entire record and based upon the law and the great deference accorded to trial court determinations as to credibility, we find that the trial judge was not manifestly erroneous in finding that the real price paid for the transfer of the litigious rights was $10.00. Accordingly, the trial court did not err in granting Borne litigious redemption.
Additionally, although the trial judge's reasons did not specifically address the issue of timeliness of Borne's plea of litigious redemption, inherent in the granting of litigious redemption is a finding that Borne timely asserted his right to this remedy. We have reviewed the record and find that the trial judge was not manifestly erroneous in finding that Borne had timely exercised this right. On November 28, 1989, Martin Gas filed a motion and order to substitute itself as party plaintiff in place of MEC, which the trial court granted on December 4, 1989. At the same time, petitioners amended their original petition. Shortly after the pre-trial conference, on August 20, 1990, Borne filed the exception pleading litigious redemption. Martin Gas does not allege, nor does the record show, that the litigation had advanced significantly *1166 during the interim. The trial judge did not find that the delay between the substitution of Martin Gas as a plaintiff and the filing of the exception precluded Borne's right to litigious redemption. We cannot say that the trial court was manifestly erroneous.

CONCLUSION
Accordingly, the judgment of the trial court is affirmed. Martin Gas is cast for all costs on appeal.
AFFIRMED.
WATKINS, J., dissents and assigns reasons.
WATKINS, Judge, dissenting.
I believe the majority erred in finding that a sale of the litigious right took place. It is uncontroverted that on June 26, 1989, Martin Energy Company executed an assignment of accounts receivable to Martin Resources, Inc. transferring any future proceeds that might be received by Martin Energy Company from the subject litigation. Thereafter Martin Energy Company transferred the house and lot to Hojew, Inc., by act of sale dated July 24, 1989. The act of sale recited consideration of $10.00, other valuable services, and the assumption of three separate obligations. Two of the recited obligations were mortgages and the third was as follows:
3. Assignment of Accounts receivable made June 26, 1989 in the principal sum of One Million ($1,000,000.00) Dollars, made and subscribed by Martin Energy Company to Martin Resources, Inc. arising from any proceeds now or hereafter received or recovered from or out of the lawsuit between Martin Energy, et al and Melville F. Borne currently pending in the 22nd Judicial District Court, Parish of St. Tammany, State of Louisiana.
I do not believe that the transfers of the property, all of which included the above cited obligations, constituted a transfer of a litigious right. Martin Energy Company assigned all the proceeds it would receive from the instant lawsuit to Martin Resources, Inc. on June 26, 1989. The only thing it transferred or allegedly sold in the act of sale on July 24, 1989, was the obligation to pursue the lawsuit and pay over any proceeds to Martin Resources, Inc. Regardless of the testimony of Ken Martin, that a transfer of a litigious right occurred, the documentary evidence does not support this legal conclusion.
I respectfully dissent.
NOTES
[1] It appears from the pleadings that the defendant's name, Borne, was misspelled in the original petition.
[2] See Comment, The Transfer of Litigious Rights in Louisiana Civil Law, (pt. 2), 1 La.L.Rev. 818, 819 (1939) for an excellent discussion of the types of transactions to which LSA-C.C. 2652 et seq. might apply. The article suggests that litigious redemption may apply to certain types of donations also.
[3] Martin introduced into evidence, as Martin 1, 2, and 3, three demand notes dated April 28, 1988, which he testified were intended to substitute for the original $310,000.00 collateral mortgage executed in connection with the purchase of the home. Martin and Jeffrey G. Martin personally endorsed all three notes. Martin testified that, when foreclosure proceedings were subsequently instituted against the property, all three notes were included in the foreclosure. An examination of the suit instituted by Hibernia National Bank, which was introduced by Martin as Martin 4, reveals that Hibernia was a holder of a $45,000.00 collateral chattel mortgage note, dated April 28, 1988, and that said note was paraphed with a collateral chattel mortgage on various items of jewelry. The petition also sets forth that Hibernia was a holder of and that the collateral chattel mortgage note was pledged to secure all sums due under the three promissory notes. The petition does not purport to recognize a mortgage over the immovable property on East Ruelle, but seeks recognition of Hibernia's security interest in the jewelry.
[4] An appraisal of the property which was performed by August Schultz & Associates, Inc. on behalf of Hojew on July 26, 1989 showed that the market value of the property as of that date was $325,000.00. A copy of the appraisal was introduced into evidence as Borne 4.
[5] Martin was unable to explain why Martin Gas was substituted as plaintiff in lieu of MEC in the instant suit, if Martin Resources had been assigned the litigious right.