666 So.2d 352 (1995)
SLOCUM-STEVENS INSURANCE AGENCY, INC., Plaintiff-Appellant,
v.
INTERNATIONAL RISK CONSULTANTS, INC., et al., Defendants-Appellees.
No. 27,353-CA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 1995.
Writ Denied March 8, 1996.
*354 Davis & Saybe by Michael H. Davis, Alexandria, for Appellant.
Robert U. Goodman, Shreveport, for Appellees, Sinclair Kouns and D. Frank Green, Jr.
Before MARVIN, NORRIS, HIGHTOWER and STEWART, JJ., and PRICE, J. Pro Tem.
MARVIN, Chief Judge.
In this action on an open account a five-judge reargument panel was convened to consider this appeal as required when one member of the original three-judge panel dissented to the reversal of the trial court's partial summary judgment in favor of the defendant debtors.[1] Defendants are an incorporated insurance agency and its personal guarantors, hereafter simply referred to as IRC, who were alleged to be indebted to an insurance company.
The right to sue on the IRC account was assigned and sold for $25,000 in 1989 to the original plaintiff, Slocum-Stevens, by Agricultural Insurance Company, one of the Great American insurance companies, simply referred to hereafter as AIC. After Slocum-Stevens instituted its right of action by suing on the open account on March 22, 1990, Slocum-Stevens executed a second contract "assigning back" the right of action to AIC in an "agreement" dated July 11, 1990. Substituting AIC as the plaintiff in the action on March 4, 1991, Slocum-Stevens and AIC attached both the 1989 contract and the 1990 agreement to the supplemental petition. The *355 attachments to the 1990 and 1991 petitions are appended to this opinion to facilitate discussion.
In the 1990 agreement, AIC paid Slocum-Stevens $25,000. According to its answers to a second set of interrogatories posed after the two contracts were disclosed in 1991, AIC denied that anything was paid for the "assignment back" of the IRC account, but explained that the $25,000 consideration paid to Slocum-Stevens for the assignment back was for
terminating the right of Slocum-Stevens to continue to write paramedical facilities policies and [for] taking over the collection of the IRC account. (Our emphasis and brackets.)
Relying on the 1989 and 1990 contracts and AIC's pleadings and answers to interrogatories, the defendant-debtors moved for a partial summary judgment declaring the assignment back of the instituted action from Slocum-Stevens to AIC was the sale or transfer of a litigious right, which has the effect of allowing the debtors to extinguish the obligation sued upon by paying AIC the same price that AIC paid for the transfer of the litigious right. See former CC Arts. 2652-2654, the substance of which was reenacted as a single article, Art. 2652, by Acts 1993, No. 841, effective January 1, 1995. The trial court agreed, saying the 1990 assignment back
certainly consists of a price that can be reasonably ascertained, despite [AIC's] argument to the contrary.... [The amount paid by AIC] should be divided, if necessary, to calculate the amount [AIC] paid for the debt.... The court will determine the price consistent with this opinion and the record at a later date if the parties do not apportion the price of the sale.
AIC argues on its appeal of the trial court judgment, as it did below, that the 1990 agreement between it and Slocum-Stevens is ambiguous, and creates a material factual dispute regarding the intent of the parties to the two contracts. AIC further claims the trial court impliedly ruled on the credibility of AIC, a consideration which is improper as a basis for summary judgment.
On our de novo review, we find that the AIC contracts, pleadings and answers to interrogatories support the summary judgment and affirm the judgment.

FACTS
When the action was instituted on March 22, 1990, the plaintiff insurance agency, Slocum-Stevens, alleged that it had been assigned the IRC account by the insurance company and that it had sent a demand letter to the IRC debtor-defendants on January 16, 1990, a copy of which is attached to the Slocum-Stevens petition as exhibit four. The demand letter attached to the original petition unequivocally states that Slocum-Stevens paid the Great American Insurance Companies "$25,000 ... for the subject account." The substituted plaintiff, AIC, is one of the Great American companies.
Thereafter and in response to exceptions, interrogatories and defenses, affirmative and general, that were promptly raised by the defendants about the validity of the assignment from Great American and AIC to Slocum-Stevens and the accuracy of the account allegedly due, Slocum-Stevens and AIC filed the "amending and supplemental petition" on March 4, 1991, wherein AIC became the substituted plaintiff.
AIC's allegation in Art. 2 of the 1991 supplemental petition, amending Art. 8 of the original petition, clearly reads:
The account due [Great American and/or AIC] by [IRC] was assigned by Great American ... to Slocum-Stevens ..., original plaintiff herein, as per [1989] Act of Assignment attached hereto as plaintiff's Exhibit 2. The said account was assigned to Slocum-Stevens ... directly by [AIC] as part and parcel of a contract between the two said entities, a copy of said contract attached hereto as plaintiff's Exhibit 2-A. Subsequently, the said account was assigned back to [AIC] by Slocum-Stevens... as part and parcel of a [1990] contract between the two said entities dated July 11, 12, 1990, a copy of said contract attached hereto as Plaintiff's Exhibit 2-B. (Our emphasis and brackets.)
AIC's exhibit two, dated October 20, 1989, also clearly states, "that Great American *356 Insurance Companies has assigned [the] right to collect the debt owed to us by [IRC] to Slocum-Stevens."
After AIC attached the 1989 and 1990 contracts to its March 4, 1991, supplemental and amending petition, the debtor-defendants repeatedly sought to have plaintiff disclose what amount of the $25,000 paid to Slocum-Stevens by AIC in 1990 was attributable to anything other than the return of the $25,000 paid to AIC by Slocum-Stevens in 1989 for the right to sue on the IRC debt. The trial court's judgment grants the motions of the debtors which were combined and styled "motion for partial summary judgment and motion to compel answers to interrogatories." Our emphasis.
AIC's answers to interrogatories had denied that any amount was paid, explaining that the assignment of the IRC account back to AIC was
part and parcel of the consideration given... for the right to market certain types of insurance policies ... Therefore, in order to market the said type policies, Slocum-Stevens paid $25,000 to AIC and, also, agreed to collect the IRC account [in 1989]. Consequently, when the parties agreed [in 1990] that Slocum-Stevens would no longer write those certain policies..., the $25,000 was returned to Slocum-Stevens and, at the same time [in 1990], Slocum-Stevens was relieved of the obligation to collect the IRC account and... said obligation was assumed by AIC once again. (Our emphasis and brackets.)
AIC further explained in its interrogatory answers in the trial court that the consideration ($25,000) paid by AIC to Slocum-Stevens in 1990, after Slocum-Stevens filed the action against IRC, was for
terminating the right of Slocum-Stevens to continue to write paramedical facilities policies and [for] taking over the collection of the IRC account. (Our emphasis and brackets.)
AIC responded below to the debtors' motions only with a memorandum in opposition, arguing that the court was "without evidence that a price was paid for the litigious right [and] would be unable to declare that the subject transaction was a sale of litigious rights."
On appeal AIC argues that the trial court "necessarily had to determine that [AIC's] answer to the interrogatories was not accurate," which determination, according to AIC, is one of credibility, making summary judgment improper. AIC argues that the trial court should not have determined the intent of the parties to the two contracts without allowing them to "explain an ambiguity" in that "at the very least," the 1990 contract "creates an ambiguitywas the $25,000 for both the servicing of existing business and the assumption of the collection of the debt or was it just for the servicing of the existing business?" Our emphasis.
AIC's further attack on the trial court judgment is that the 1990 agreement is ambiguous to the extent that the "argument [is] available" to AIC that "no price was paid" to Slocum-Stevens and that the intent of the parties that will be established at trial is that the $25,000 was paid by AIC to Slocum-Stevens in 1990 "exclusively for the servicing of existing policies."

PARTIAL SUMMARY JUDGMENT
The purpose and function of summary judgment, which may be granted as to all or part of the relief sought by a litigant, is to avoid the delay and expense of a trial on the merits and to expedite the disposition of cases that involve only issues of law, without material factual disputes. CCP Art. 966; Smith v. Our Lady of the Lake Hospital, 93-2512 (La. 7/5/94), 639 So.2d 730; Barto v. Franchise Enterprises, Inc., 588 So.2d 1353 (La.App. 2d Cir.1991), writ denied.
Summary judgment is sparingly, but occasionally, employed in cases which involve subjective facts such as intent or good faith. See, for example, Smith, supra, and Carter v. BRMAP, 591 So.2d 1184 (La.App. 1st Cir. 1991).
An allegation or assertion of a material factual dispute will not defeat summary judgment if the supporting and opposing documents, taken as a whole, demonstrate that the asserted factual issue is transparent or patently insubstantial. Ouachita Nat. Bank *357 v. Palowsky, 570 So.2d 114 (La.App. 2d Cir. 1990); Aydell v. Charles Carter & Co., Inc., 388 So.2d 404 (La.App. 1st Cir.1980), writ denied; Jones v. American Bank & Trust Co., 387 So.2d 1360 (La.App. 1st Cir.1980). This principle is especially true when the action or the defense is based on written contracts.
The issue whether a contract is ambiguous is one of law. Carter, supra; McCrory v. Terminix Service Co., Inc., 609 So.2d 883 (La.App. 4th Cir.1992). The interpretation of an unambiguous contract is also a question of law, which may sometimes be resolved by summary judgment. See McCrory, supra, and Horton v. Mobley, 578 So.2d 977 (La.App.2d Cir.1991), writ denied.
The fact that one party may create a dispute about the meaning of contractual provisions does not render the provisions ambiguous. A court must give effect to the ordinary meaning of words and may not create an ambiguity where none exists. See Commercial Union Ins. Co. v. Advance Coating Co., 351 So.2d 1183 (La.1977), cited and discussed in Esplanade Oil & Gas v. Templeton Energy Income Corp., 889 F.2d 621 (5th Cir.1989). See also McCrory, supra.
To determine whether there is a genuine issue of material fact on a motion for partial summary judgment, a court must necessarily examine the merits of whether the disputed issues of fact asserted by the respondent to the motion are so patently insubstantial as to present no real factual issues as a matter of law. If the respondent asserts the presence of factual disputes which are found to be transparent or unsupported when contrasted with the hard realities and accepted construction of written contracts, partial summary judgment is appropriate and may be granted. See Aydell, cited supra, 388 So.2d at 406-7.
In ruling on a motion for partial summary judgment, the trial court is confined to two inquiries: Are the material facts genuinely disputed? If not, is the mover entitled to judgment as a matter of law? Because the trial court merely identifies the presence or absence of material factual issues, without resolving any factual conflicts that may exist, and applies the law to facts that are not genuinely disputed, the trial court's judgment is reviewed de novo on appeal. Smith, supra.
Where the documents relied on in support of a motion for partial summary judgment are exclusively the documents of the respondent to the motion, a court may reach the ultimate conclusion of the absence of a genuine issue of material fact on the documents alone. Here, the factual issue is whether any monetary amount was paid for the assignment back of the instituted right of action on the IRC account in the 1990 agreement. Resolving, or determining the substantiality or genuineness of the arguable or claimed ambiguities in such a circumstance, on de novo review of the respondent's documents, is not "improperly" determining the subjective intent or credibility of the respondent. The contracts and other documents of the respondent shall be interpreted, not to create or give legal effect to claimed ambiguities that are found insubstantial or transparent, but according to recognized principles of contract interpretation.
If a litigious right is transferred with a non-litigious right in a lump sum transaction, an apportionment must be made in order to determine the amount of reimbursement. See Martin Energy Co. v. Bourne, 598 So.2d 1160, 1163 (La.App. 1st Cir.1992) and authorities discussed therein.

DISCUSSION

Right v. Obligation?
The demand letter to IRC on January 16, 1990, unequivocally establishes that Slocum-Stevens paid Great American "$25,000... for the [IRC] account." AIC's exhibit two to the March 4, 1991, supplemental petition establishes "that Great American Insurance Companies has assigned [the] right to collect the debt owed ... by [IRC] to Slocum-Stevens ..." See also Art. 2 of the 1991 supplemental petition, quoted supra.
The two paragraphs (B) on page 2, and the provisions on pages 3 and 4 of the 1989 contract not only allow, but support, the conclusion that Slocum-Stevens paid AIC $25,000 *358 in 1989 for the right to sue on the IRC account. Similarly, paragraph (A) on page 1, and paragraphs (A) and (C) on page 2 of the 1989 contract refer to the marketing of AIC's paramedical insurance policies and the sharing of premiums therefor by Slocum-Stevens, as distinguished from the other paragraphs mentioned.
AIC's argument below was based on its answer to interrogatories:
... in order to market the [paramedical] policies, Slocum-Stevens paid $25,000 to AIC [in 1989] and, also, agreed to collect the IRC account. Consequently, when the parties agreed [in 1990] that Slocum-Stevens would no longer write those ... policies,... the $25,000 was returned to Slocum-Stevens and, at the same time [in 1990], Slocum-Stevens was relieved of the obligation to collect the IRC account and... said obligation was assumed by AIC once again. (Our emphasis and brackets.)
AIC's contentions are based on the premise that it assigned nothing more to Slocum-Stevens in the 1989 contract than the obligation to sue on the account that was owed to AIC by IRC, and that this obligation was later terminated and assumed by AIC. As is clearly indicated by our immediately preceding discussion, this obligation to sue, and not right to sue, premise is belied by the documents AIC produced or filed in the record.
Slocum-Stevens paid AIC $25,000 in 1989 for the right to sue on the account. In the 1989 contract Slocum-Stevens was assigned the right to sue IRC, but was not obligated to AIC to sue on the IRC account. Slocum-Stevens' specific obligations to AIC relative to the IRC account in the 1989 contract were conditioned upon Slocum-Stevens successfully collecting more than $55,000 from the debtors [should Slocum-Stevens collect more than $55,000, the excess shall be paid to AIC (First par., p. 3 of 1989 contract)] and upon a "claim" being made against AIC arising "out of Slocum-Stevens' efforts to collect the assigned debt of [IRC]." (First par., p. 4 of 1989 contract). Slocum-Stevens' obligations to AIC in the 1989 contract relative to the IRC account were obligations "to pay," and were not obligations "to do [to sue]."
Moreover, the 1990 original petition and the 1991 supplemental petition clearly speak of the assignment and assignment back of "the IRC account," the latter occurring in 1990, after the action on the IRC account was instituted. The law has long distinguished a right from an obligation. We shall not transmogrify one into the other in this appeal.
Similarly, the AIC documents in the record belie that part of AIC's argument that the $25,000 was paid by Slocum-Stevens to AIC in 1989 "in order to market [the paramedical policies] and ... collect the IRC account [and that] consequently, when the parties agreed [in 1990] that Slocum-Stevens would no longer write those ... policies, the $25,000 was returned to Slocum-Stevens." See discussion, infra, of the specific provisions in each contract regarding the right to market or service paramedical policies, and the stated respective considerations therefor.
On the record before us, there can be no genuine dispute of the material fact that the $25,000 Slocum-Stevens paid AIC in 1989 was for the right to sue on the IRC account, and was not for the right to market paramedical policies. The 1990 agreement does not require a contrary finding.

The 1990 Agreement
The 1990 agreement states that it "terminates" the 1989 contract except for matters stated in four subparagraphs, 1(a) through 1(d). Subparagraph 1(a) of the 1990 agreement refers to the paramedical insurance referred to in Paragraph C of the 1989 contract. Subparagraph 1(c) of the 1990 agreement refers to Slocum-Stevens processing existing and renewal policies, while 1(d) refers to forms and supplies furnished to Slocum-Stevens by the company.
Par. 1(a) and the first sentence of Par. 1(b) refer solely to Slocum-Stevens agreeing "to fully service the existing book of business which consists of paramedical facilities policies" (Par. 1(a)) and the specific "consideration" therefor.
In consideration for the servicing of policies by Agent as described in 1(a), Company will pay to Agent commissions as set *359 forth in the Agreed Plan Summary dated November 2, 1989.
First sentence, Par. 1(b).
AIC would have us ignore these provisions and construe the remainder of Par. 1(b) in isolation from even the other AIC documents, including the two contracts, AIC's supplemental petition filed March 22, 1991, and AIC's answers to the second set of defendants' interrogatories. For further discussion purposes we quote the entirety of Par. 1(b) of the 1990 agreement:
In consideration for the servicing of [the paramedical] policies by Agent [Slocum-Stevens] as described in 1(a), Company [AIC] will pay to Agent commissions as set forth in the Agreed Plan Summary dated November 2, 1989. Company will also pay to the Agency the sum of $25,000 as consideration for the servicing of existing business by the Agent. Company will also assume collection of the IRC, Inc. debt which has been reduced to $80,095.16 as of the date of execution of this Agreement.
The Agent will be responsible for any and all legal fees the Agency has incurred or will incur as a result of the Agent's IRC debt collection activities prior to execution of this agreement. Any claim, cause of action, law suit or judgment which exists or arises as a result of Agent's collection efforts against IRC shall be the full responsibility of the Agent. Company shall assume liability for any claim, cause of action, lawsuit, or judgment which exists or arises as a result of any erroneous information provided by Company to the Agent for collection purposes. (Our brackets.)
The amended Art. 8 of the original petition clearly reads:
The account due [AIC] was assigned to... original plaintiff ... directly ... as part and parcel of a contract between the two said entities ... Subsequently the said account was assigned back to [AIC]... as part and parcel of a contract between the two said entities dated ... 1990, a copy of said contract attached ... (Our emphasis and brackets.)
In 1989 AIC assigned the right to sue on the IRC account to Slocum-Stevens for $25,000. In 1990 Slocum-Stevens "assigned back" to AIC the right to sue on the account, and AIC returned "the $25,000" to Slocum-Stevens. Notwithstanding that these rather simple transactions are included in each contract that deals with other matters, such as the marketing (1989) or servicing (1990) of paramedical insurance policies, a fair reading of the whole of each agreement demonstrates that the respective provisions and the consideration for dealing with the IRC account, on the one hand, and the paramedical policies, on the other, are substantively independent, each being susceptible of a meaningful and logical construction without reference to the other.
In the 1989 contract it is clear that the consideration or cause for Slocum-Stevens marketing the paramedical policies was that the agency would be paid the commission on the first $500,000 worth of premiums, after which the agency would pay AIC $30,000 exclusively from the commissions earned on the next $600,000 in premiums that were paid. Compare Par. C of the 1989 contract with Par. 1(a) and the first sentence of Par. 1(b) of the 1990 agreement.
In the 1990 agreement "terminating" the 1989 contract, it is also clear that Slocum-Stevens' "consideration" (Par. 1(b)) for servicing the "existing book of business which consists of paramedical ... policies" (Par. 1(a)) was "commissions as set forth in the Agreed Plan Summary dated November 2, 1989." Par. 1(b), first sentence.
In the same paragraph (1(b)) of the 1990 contract making the assignment back to AIC, "the $25,000 was returned to Slocum-Stevens" (AIC's answer to interrogatory). As shown above, the consideration for Slocum-Stevens servicing the AIC paramedical policies is clearly stated in the first sentence of Par. 1(b) of the 1990 agreement and is distinguished from the "servicing of existing business" in the second sentence of Par. 1(b) of the 1990 agreement. Even in the light most favorable to AIC, the servicing of existing business must be construed to mean servicing AIC "business" other than paramedical policies, the extent and nature of which "business" is not disclosed or explained in *360 this record. The documents supporting the partial summary judgment unambiguously establish that the $25,000 payment in each contract had nothing to do with, and was unconnected with, the AIC paramedical policies that Slocum-Stevens agreed to market or write (1989) or to service (1990).
Under these circumstances and from the pleadings and attachments and answers to interrogatories filed solely by the plaintiffs, Slocum-Stevens and AIC, a court should be allowed to conclude on the defendants' motion for partial summary judgment that there is no genuine dispute of the material fact that some or all of the $25,000 paid by AIC to Slocum-Stevens in the 1990 agreement was a return in whole or in part of the $25,000 Slocum-Stevens paid AIC for the assignment of the right to collect the IRC account in 1989. These undisputed facts reasonably allow the legal conclusion that the assignment back to AIC by Slocum-Stevens of the right of action earlier paid for and exercised by Slocum-Stevens was a transfer or sale of a litigious right for a monetary consideration, the precise amount of which the court shall determine after further proceedings if the parties cannot agree on the amount.
Where, as here, a litigious right is transferred with a non-litigious right in a lump sum transaction, an apportionment of the price must be made in order to determine the amount of reimbursement the debtor must pay the transferee of that litigious right. Martin Energy Co. v. Bourne, cited supra, at p. 1163.

CONCLUSION
Our de novo review of the record in this appeal of a partial summary judgment requires us to determine whether the material facts are not genuinely disputed: who paid whom, when and for what? Where the documents relied on in support of partial summary judgment are construed together and come solely from the one against whom summary judgment is sought, we may reach the ultimate conclusion of the absence of a genuine issue of material fact on the documents alone, notwithstanding the arguable ambiguity in the documents. Weighing the substance of the claimed ambiguities in such a circumstance on de novo review, is not "improperly" determining the credibility of a litigant on a motion for summary judgment, as AIC contends. When the premise on which contentions are based must fail [the assignment and assignment back were of an obligation for which nothing was paid], the contentions also fail.
Ambiguities of whatever degree in writings of every conceivable sort can be claimed. Where the overall substance of all the writings comes solely from the respondent to a motion for summary judgment, the writings may be used to determine the absence of a genuine issue of material fact without the necessity of allowing the respondent to explain at trial the arguable ambiguities or what was intended by the writings coming from the respondent.
On the peculiar circumstances of this record, we shall affirm the judgment granting defendants' combined motions for partial summary judgment and to compel answers to interrogatories.

DECREE
The judgment is affirmed at the cost of appellant.
HIGHTOWER, J., dissents with written reasons.
NORRIS, J., dissents for the reasons assigned by HIGHTOWER, J.

APPENDIX

DAVIS & SAYBE Attorneys at Law

POST OFFICE BOX 5511 ALEXANDRIA, LA. XXXXX-XXXX

February 16, 1990
Mr. Sinclair Kouns MOR-TEM 2800 Youree Drive Shreveport, LA. 71104
Mr. D. Frank Green, Jr. Hutchinson and Green, Inc. 820 Jordan StreetSuite 470 Shreveport, LA. 71101
*361 International Risk Consultants, Inc. 5210 Hollywood Shreveport, Louisiana 71109
Gentlemen:
Please be advised that I represent Slocum-Stevens Insurance Agency who has been assigned the account of Internal [sic] Risk Consultants, Inc. with Great American Insurance Companies.
As of this date, International Risk Consultants, Inc. owes Slocum-Stevens Agency Insurance Agency, Inc. as a result of the assignment by Great American Insurance Companies the sum of $80,095.16. As evidence of this indebtedness, enclosed are copies of the ledger accounts of Great American Insurance Companies. You will note a credit on the account of $25,000.00 which has been added back in in order to come up with the total amount owed by you at this time. This $25,000.00 figure was the amount paid by Slocum-Stevens Insurance Agency, Inc. for the subject account.
Also enclosed is a copy of the personal guaranty signed by both Sinclair Kouns and D. Frank Green, Jr.
Therefore, please be advised that this is demand upon you to pay through this office the sum of $80,095.16 within fifteen days after your receipt of this letter. If said sum is not paid in full, legal proceedings will be commenced against you, in which not only with [sic] the principal amount owed be sought, but also interest, attorney's fees and court costs.
 Yours very truly,
 DAVIS & SAYBE
 BY: /S/________
 Michael H. Davis

GREAT AMERICAN INSURANCE COMPANIES

GREAT AMERICAN-SOUTH, INC.

LAWRENCE M. LESCHANDER VICE PRESIDENT

3105 GLENWOOD AVENUE RALEIGH, NC 27612 919/783-1400
October 20, 1989

TO WHOM IT MAY CONCERN:
This is to acknowledge that Great American Insurance Companies has assigned to [sic] right to collect the debt owed to us by International Risk Consultant, Inc. to Slocum-Stevens Agency, Inc.
/s/Lawrence M. Leschander
Lawrence M. Les Chander
Vice-President Southern Markets

CONTRACT

STATE OF NORTH CAROLINA COUNTY OF WAKE
BE IT KNOWN, on the dates hereinafter shown, before the undersigned Notaries Public, all qualified in and for their respective locales, and in the presence of the undersigned competent witnesses, personally came and appeared:
SLOCUM-STEVENS INSURANCE AGENCY, INC., a Louisiana corporation, domiciled in Rapides Parish, Louisiana, represented herein by the undersigned, duly authorized, and whose mailing address is 3107 Highway 28 East, Pineville, Louisiana 71360.
AGRICULTURAL INSURANCE COMPANY, a corporation organized under the laws of the State of South Dakota, and whose mailing address is 580 Walnut Street, Cincinnati, Ohio 45202 who is duly authorized to sign this Agreement on its behalf.
who, after being duly sworn, did enter into the following agreement:
Agricultural Insurance Company hereby grants unto Slocum-Stevens Insurance Agency, Inc. the following considerations:
(A) The exclusive right to market and sell within the State of Louisiana that policy of insurance issued by Agricultural Insurance Company known as Para Medical Facilities Insurance. Said exclusive right is for an indefinite period of time but can be terminated by either party only upon timely written notice of one to the other as provided in the *362 AgencyCompany Agreement executed October 20, 1989;
(B) The right to collect the debt owed to Agricultural Insurance Company by International Risk Consultant, Inc., a Louisiana Corporation, domiciled in Shreveport, Louisiana, said debt in an amount between $75,000.00 and $80,000.00.
In consideration of the above, Slocum-Stevens Insurance Agency, Inc. will:
(A) To actively and diligently market within the State of Louisiana policies of insurance issued by Agricultural Insurance Company known as Para Medical Facilities Insurance;
(B) Payment of Twenty-five Thousand ($25,000.00) Dollars, cash at the execution of this agreement;
(C) Payment of Thirty Thousand ($30,000.00) Dollars in the following manner and upon the following conditions:
a. Payments to Agricultural Insurance Company are to be paid exclusively from sales of the Para Medical Facilities Insurance. After Slocum-Stevens Insurance Agency, Inc. has sold Para Medical Facilities Insurance policies with premiums totaling $500,000.00 in both new policies and renewals thereof sold, Slocum-Stevens Insurance Agency will pay to Agricultural Insurance Company an amount equal to five (5%) percent of the total premiums paid over and above the first $500,000 worth of premiums as stated above. Such five (5%) percent payments would continue until total sales by Slocum-Stevens Insurance Agency, Inc. of the Para Medical Facilities Insurance totals $1,100,000.00 at which time the $30,000.00 consideration would be paid in full. However, in no event will Slocum-Stevens Insurance Agency, Inc. owe Agricultural Insurance Company any portion of those commissions earned by Slocum-Stevens Insurance Agency, Inc. on the first $500,000.00 worth of new or renewal policies sold of the Para Medical Facilities Insurance.
Should Slocum-Stevens Insurance Agency, Inc. collect from International Risk Consultant, Inc., or any other person or entity personally liable for the said debt described above, an amount in excess of $55,000.00, then Slocum-Stevens Insurance Agency, Inc. shall pay that excess amount to Agricultural Insurance Company less any costs of collection including, but not limited to, attorney fees and court costs. If Slocum-Stevens Insurance Agency, Inc. collects more than what has been currently paid the Agricultural Insurance Company, that money will be forwarded to the Agricultural to satisfy the agreement.
In order to carry out the intent and purposes of this agreement, Agricultural Insurance Company does hereby assign, transfer, set over and deliver unto Slocum-Stevens Insurance Agency, Inc. that debt and/or account receivable owed by International Risk Consultant, Inc. as well as any personal indemnifier, i.e. Sinclair C. Kouns and D. Frank Green, Jr., to Agricultural Insurance Company. This assignment includes any and all sums now due or owing to the said Agricultural Insurance Company by International Risk Consultant, Inc., or personal indemnifiers thereof, or that may hereafter become due or owing to Agricultural Insurance Company. Agricultural Insurance Company does hereby authorize, direct and instruct International Risk Consultant, Inc. and any personal indemnifiers, i.e. Sinclair C. Kouns and D. Frank Green, Jr., their successors and assigns, to pay to the said Slocum-Stevens Insurance Agency, Inc. the amounts due and owing or to become due and owing as aforesaid, which sums total between $75,000.00 and $80,000.00.
Slocum-Stevens Insurance Agency, Inc. further agrees to indemnify and hold harmless Agricultural Insurance Company, its directors, employees and officers from and against all claims, causes of action, liabilities, costs or expenses, including reasonable attorneys fees attributable to any claim which arises out of Slocum-Stevens efforts to collect the assigned debt of International Risk Consultant, Inc.
THUS DONE AND PASSED in my notarial office in Raleigh, Wake Co., NC, on the 20 *363 day of October, 1989, before me, the undersigned Notary, and the undersigned competent witnesses, after due reading of the whole.
Carolina, on the 20 day of October, 1989, before me, the undersigned Notary, and the undersigned competent witnesses, after due reading of the whole.
AGRICULTURAL INSURANCE COMPANY SLOCUM-STEVENS INSURANCE
 AGENCY, INC.
BY: John James McGovern BY: George H. Stevens
[Signature]
 Witness [Signature]
 Witness
[Signature]
Witness [Signature]
 Witness
[Signature]
Notary Public [Signature]
 Notary Public
THUS DONE AND PASSED in my notarial
office in Raleigh, Wake County, North My Commission Expires 10-16-93
 AGREEMENT
This Agreement made and entered into this 11 day of July, 1990, by and between
__ Great American Insurance Company
__ American National Fire Insurance Company
X American Alliance Insurance Company
X Agricultural Insurance Company
all of which Companies have their Administrative Offices at 580 Walnut Street, Cincinnati,
Ohio, and are hereinafter referred to, jointly or individually, as "Company",
and
Slocum-Stevens Agency, Inc. Name of Agent
3107 Highway 28 East, Suite 1, Pineville, La. Address of Agent
hereinafter referred to as "Agent".
WITNESS THAT:
In consideration of the mutual covenants and agreements herein contained, the parties hereto
agree as follows:
1. Effective July 11, 1990, the AgencyCompany Agreement executed between the
Company and Agent October 20, 1989 and the "Contract" executed between the Agency
and Company on October 20, 1989 are terminated with the following exceptions:
(a) Agent agrees to fully service the existing book of business which consists of
paramedical facilities policies. Agent's authority is limited to the usual and
customary services of an insurance agent on existing contracts. Effective from the
date of this Agreement, Agent's authority as provided in AgencyCompany
Agreement and the Contract is revoked to the extent that Agent and his representatives,
including sole-producers, have no authority to bind Company orally or
otherwise, or to accept for Company any new risks or to issue any new policies or
bonds or to increase the amount or extend the term or conditions of any policies
without the written consent of Company.
(b) In consideration for the servicing of policies by Agent as described in 1(a),
Company will pay to Agent commissions as set forth in the Agreed Plan Summary
dated November 2, 1989. Company will also pay to the Agency the sum of $25,000
*364 as consideration for the servicing of existing business by the Agent. Company will also assume collection of the IRC, Inc. debt which has been reduced to $80,095.16 as of the date of execution of this Agreement.
The Agent will be responsible for any and all legal fees the Agency has incurred or will incur as a result of the Agent's IRC debt collection activities prior to execution of this agreement. Any claim, cause of action, law suit or judgement which exists or arises as a result of Agent's collection efforts against IRC shall be the full responsibility of the Agent. Company shall assume liability for any claim, cause of action, lawsuit, or judgement which exists or arises as a result of any erroneous information provided by Company to the Agent for collection purposes.
(c) Agent will fully cooperate with Company in order to process existing policies for nonrenewal with appropriate notice to insureds as required by Louisiana law.
(d) All supplies including forms and policies furnished by Company shall remain the property of Company and be returned to Company or its representative upon demand.
THUS DONE AND PASSED in my notarial office in ______________________ on the _______day of ________, 19___, before me, the undersigned Notary, and the undersigned competent witnesses, after due reading of the whole.
 AMERICAN ALLIANCE INSURANCE COMPANY AGRICULTURAL INSURANCE COMPANY [Signature] Witness BY: [Signature] Name:[Signature] Title:[Illegib [Signature] Witness [Signature] Notary Public
THUS DONE AND PASSED in my notarial office in[Illegible] on the 12 day ofJuly, 1990, before me, the undersigned Notary, and the undersigned competent witnesses, after due reading of the whole.
 SLOCUM-STEVENS INSURANCE AGENCY, INC. [Signature] BY:[Signature] Name:[Signature] Title: [Illegible] [Signature] Witness
[Signature] [Signature] Witness Notary Public
HIGHTOWER, Judge, Dissenting.
The majority struggles long and mightily in attempting to tailor the case before us to fit the summary judgment mannequin. Considering the present record, however, I am unwilling to join that adventure.
The litigious redemption provisions of LSA-C.C. Art. 2652 contemplate only sales *365 and onerous transfers of a litigious right in which a price can be determined. Martin Energy Co. v. Bourne, 598 So.2d 1160 (La. App. 1st Cir.1992). Here, and at this juncture, the question to be resolved is whether the record establishes, beyond any genuine issue of material fact, that a portion of the recited $25,000 sum constituted payment for the right to collect the IRC debt.
In an agreement executed in October 1989, the Agricultural Insurance Company (AIC) gave the Slocum-Stevens Insurance Agency, Inc., the exclusive right to market and sell certain AIC policies known as paramedical facilities insurance, as well as the right to collect an indebtedness owed to AIC by International Risk Consultants (IRC). In exchange, the agency would actively market the policies, pay $25,000 in cash immediately, pay $30,000 from commissions earned over time, and pay directly to AIC any sums collected from IRC in excess of $55,000.
Later, in July 1990, after Slocum-Stevens instituted suit on the debt, the insurance company and the agency terminated a substantial part of their relationship. They agreed that Slocum-Stevens would continue to service the existing paramedical facilities policies, and, as compensation for this service, AIC would both reassume collection of the IRC debt and pay the agency $25,000. Specifically, the 1990 contract between AIC and Slocum-Stevens states:
1.(b) In consideration for the servicing of policies by Agent as described in 1(a), Company will pay to Agent commissions as set forth in the Agreed Plan Summary dated November 2, 1989. Company will also pay to the Agency the sum of $25,000 as consideration for the servicing of existing business by the Agent. Company will also assume collection of the IRC, Inc. debt which has been reduced to $80,095.16 as of the date of execution of this Agreement. [Emphasis added.]
In the present record, and in response to a second set of interrogatories, AIC states that the obligation to collect the debt constituted "part and parcel" of the original consideration (along with $25,000) given by Slocum-Stevens at the time of the 1989 agreement for the right to market the indicated insurance policies. AIC further notes that, when the parties later agreed Slocum-Stevens would no longer market those policies, the insurance company returned the $25,000 to Slocum-Stevens and reassumed the collection of IRC's debt. As additionally explained, AIC rendered the consideration expressed for the continued servicing of the existing policies "by tendering a check to Slocum-Stevens Insurance Agency in the amount of Twenty-five Thousand dollars ($25,000), terminating the right of Slocum-Stevens Insurance Company to continue to write paramedical facilities policies and by[1] taking over the collection of the International Risk account."
The majority reasons that, by reading the two contracts together, it is disclosed in each instance that part (if not all) of the $25,000 sum had been paid for the IRC debt. Yet the language of the 1990 contract expressly states that the $25,000 is being paid as part of the consideration for Slocum-Steven's continued servicing of existing business. What is more, the document does not say that the sum represents payment for the transfer of IRC's debt. Beyond that, the answers to interrogatories are to the same effect. Thus, to say the very least, the documents of record do not present such a clear and concise picture as would justify the summary judgment rendered below.
The burden of proof in summary judgment is on the mover to establish that there are no genuine issues of material fact; only when reasonable minds must inevitably concur is summary judgment warranted. LSA-C.C.P. Art. 966; American Bank v. Saxena, 553 So.2d 836 (La.1989); Freeman v. Moss Well *366 Service, Inc., 614 So.2d 784 (La.App.2d Cir. 1993), writ denied, 618 So.2d 413 (La.1993). Summary judgment is seldom suitable for dispositions of cases requiring a judicial determination of subjective facts such as motive, intent, good faith, or knowledge. See Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d 1115 (La.App.2d Cir.1991), writ denied, 587 So.2d 695 (La.1991). Credibility determinations have no place in the summary judgment procedure. Id. Furthermore, the mover's pleadings, affidavits, and documents are to be closely scrutinized, while those of the opponent are to be indulgently treated. Freeman, supra.
As indicated earlier, the record at hand fails to establish that there are no genuine issues of material fact in this matter. Instead, inasmuch as the agreement itself unequivocally states that the sum in question constitutes payment for a nonlitigious right, the district court erred in granting summary judgment. Indeed, the majority recognizes that "arguable ambiguities" exist. In sum, the case clearly should be remanded for trial.
I respectfully dissent.
NOTES
[1] J. Charles R. Lindsay, a member of the three-judge panel, resigned from this court on October 14, 1995. J. James E. Clark, who was assigned pro tempore to fill that vacant judgeship, recused himself from this case. With the two members of the original panel, C.J. Marvin and J. Hightower, three judges were drawn to make up the five-judge reargument panel. LSA-Const. Art. 5, § 8.
[1] In quoting this passage from AIC's answers to interrogatories, the majority changes this "by" to "for" within brackets, thus, implying that the $25,000 was paid for the right to collect the debt. Although the record does not contain the question posed to AIC, the answer reveals that Slocum-Stevens received two types of consideration for the continued servicing: 1) a check for $25,000, and 2) relief from the obligation to collect the sums owed. (The July 1990 contract also refers to the responsibility for legal fees, lawsuits, claims, etc., that may emerge, or that had previously resulted, from attempts to collect the IRC debt.)